**TROPIC–AIRE, Inc., v. CULLEN–THOMPSON MOTOR CO.**

No. 10830.

District Court, D. Colorado.
July 22, 1938.

Grant, Shafroth & Toll, Morrison Shafroth, and Ora H. George, all of Denver, Colo., and Paul, Paul & Moore, A. C. Paul, Maurice M. Moore, and Harold Olsen, all of Minneapolis, Minn., for plaintiff.

Frederick Sass, of Denver, Colo., John A. Blair, of Detroit, Mich., Drury W. Cooper, of New York City, and J. King Harness and Harness, Dickey & Pierce, all of Detroit, Mich., for defendant.

SYMES, District Judge.

This suit charges infringement of all the claims, except claim 8, of reissue patent No. 17,131, dated November 13, 1928, to Tropic-Aire, Incorporated, as assignee of Orville S. Caesar. The reissue is on patent No. 1,668,490, granted May 1, 1928, application dated February 7, 1927. The plaintiff, a Delaware corporation, with a principal place of business in Chicago, is engaged in the manufacture and sale of heating systems for automobiles, principally the manufacturing and selling of the invention in suit, since 1926. The defendant, Cullen-Thompson Motor Company, a Colorado corporation, distributes Chrysler and Plymouth automobiles equipped with a heater alleged to infringe the reissue Caesar patent in suit.

The invention relates to new and useful improvements in apparatus for heating the interiors of automotive vehicles, such for instance as sedans and busses. It is an assembly of several old elements, consisting of a small hot water radiator with a small electric fan, placed preferably just behind the dash. The heating unit is a comparatively small, efficient, honeycomb type, connected by two pipes to the liquid cooling system of the engine at a point just back of the radiator of the car, thus affording means for the flow of the cooling medium from the engine jacket to and from this heating radiator, which is traversed by air passageways, through which air, impelled by the fan, passes and absorbs heat.

The fan is of the variable speed type and positioned in close relation to the radiator, thus creating constant re-circulation of air through the radiator and the interior of the car. The fan is connected to the car battery system and has a small rheostat. A conveniently placed switch permits it to be operated at variable speeds, thus controlling the re-circulation of the air within the body of the car. A valve in the feed pipe to the radiator affords control of the hot water supply.

The defendant pleads lack of invention, citing a long list of prior patents' going back to June 13, 1869.

The problem of heating the interior of a closed automobile is almost as old as the automobile itself. A British patent to Daimler, No. 9026 of 1899, is perhaps the first of many attempts to solve it. The pioneers in this field first made use of the exhaust gases from the engine conducted through pipes to a heater of the so-called foot warmer type placed in the floor of the body. The objections to this are obvious: Excessive amount of heat causing rapid corrosion of the mechanism, leaks in the piping through which poisonous gases, carbon monoxide, for instance, escaped into the car, dirt and moisture coming in contact with the hot surface of the heater, and lack of temperature control.

The next step was to conduct air through an air heater, heated by the exhaust gases, and discharge it into the body of the car. This had many advantages, but apparently failed to overcome the objections already recited. The heat control varied widely, due to variations in the speed, engine load, grades and other road conditions, as well as the outside temperature. Different makes and models of cars required a special design and a different method of installation.

Next hot liquid foot warmers, heated by the hot liquid from the engine cooling system circulating through a heating element located in the body were tried. This device marked quite an advance in this field. It was simple, cheap, easy of in-

stallation and adaptable to any make of car. It left much to be desired, however, being deficient in heating capacity, non-uniform heat, inefficient radiation, and requiring large and heavy parts.

Further improvements were effected by superheating the hot liquid from the cooling system with the exhaust gases; using a special supply of liquid heated by the exhaust gases; and also by passing air through the cooling radiator of the engine cooling system and piping it to the vehicle body. These disclosures were all patented and well-known in the art prior to the reissue patent in suit; that is to say, the workers in this field were by varying methods and with indifferent success heating the interiors of automobiles by means of heat from the liquid cooling system of the automobile engine. A typical disclosure is Faruolo, No. 1,124,403, January 12, 1915, and Anderson, December 26, 1922, No. 1,439,857, who showed an advance over Faruolo, in that the water for his heater circulated through it and the water jacket of the engine without going through the engine radiator until the water there had reached the temperature at which a thermostat on the line had been set. This permitted the heater to warm the interior of the car without waiting until the hot water in the cooling system as a whole reached the necessary temperature. None of these devices used a fan.

Approaching the problem from another angle, it may be observed that heating air by passing it over a hot surface is so old that the mind of man runneth not to the contrary. It antedates our civilization. Sturtevant in 1869, No. 92,490, disclosed Caesar's idea when he said: "In employing centrifugal blowers, it is often an object to heat or cool the air moved thereby, on its passage into or from the blower, and sometimes to cool the air before it enters, and to heat it after it leaves the blower, as in cases where very dry hot air is needed."

And: "I propose to utilize the heat escaping with the exhaust-steam, for heating the air acted upon by the blower." He also says, the basic principle of his idea is the mutual operation together of an air blast apparatus and a heater or cooler.

Likewise Modine's heater, No. 1,666,-907, filed April 7, 1923, granted April 24, 1928, manufactured and sold as early as 1925. It comprises a heating core in close association with a permanently mounted electric motor-driven fan forcing air through the radiator. He describes it as a heating apparatus for use in shops, factories, garages, etc. His unit may consist of any well-known type of automobile radiator construction with ports at the top and bottom for the admission and discharge of the heating medium in close approximation with "any suitable fan and driving mechanism," and like Caesar it may be used to re-circulate the air in a room or closed compartment.

See also the Muir patent, No. 1,581,761, filed February 15, 1922, dated April 20, 1926 "new and useful improvements in hot-air heaters for automobiles." It consists of a hot water heater affixed to the dashboard in connection with a fan located immediately back of the engine cooling system radiator and arranged to drive air through a conduit to and through the heater, thus supplying heated fresh air rather than re-circulating air already in the compartment.

And Corbin, No. 593,737, November 16, 1897, said: "Our invention has for its object to improve the heating and regulation of the temperature of living rooms where radiators must be employed; and to this end our invention consists of means for regulating, directing, and controlling the flow of the air over the heated plates of a radiator," etc.

Plaintiff's expert says Caesar discloses a combination heating an automobile body under various conditions of engine operation and weather without danger of noxious gases or fumes, and under the finger-tip control of the driver. Continuing: This is accomplished by forcibly, but controllably, re-circulating and re-heating the air, the entire unit being within the body and off the floor. He claims for the invention a tiny but efficient hot liquid unit combined with a tiny but high-speed efficient electric fan.

It may be conceded that by appreciably reducing the size of the fan and the heating unit Caesar was able to conveniently locate his whole assembly under the dash of any conventional car and by means of a switch, likewise conveniently located, control at the will of the driver the speed of the fan and the re-circulation. This was a decided advantage and chiefly responsible, perhaps, for the considerable commercial success of his heater. But invention cannot be predicated upon

reduction in size of a well-known element. Obviously the size of the units may be reduced in proportion as their efficiency is increased; that is to say, a high-speed efficient fan, in association with a small efficient radiator, will produce as much heat as a larger but less efficient fan and larger heating unit. Use of Modine's idea in an automobile or train is the same in principle as its original use in a factory. And as plaintiff's expert admitted, where a radiator of any kind is used to heat an enclosed space, the addition of a fan blowing air over or through it does not introduce any new principle of mechanics. It merely increases the heat output.

Plaintiff's Exhibit 43 recites 10 features of Caesar's heating system, claimed, with considerable justification, to distinguish and make it in some respects superior to the prior art. But most, if not all of these, it admits, follow the use of the fan.

The distinguishing feature of Caesar is the use of the fan in close association with the heater. As already pointed out, for many years prior, radiators had been placed in the body of automobiles, which extracted heat from the engine cooling water circulated through them. Caesar increased the efficiency by means of a small high-speed fan. But Modine and others had already disclosed the same idea. He found that by employing the more efficient copper tube or copper-celled radiators he could make his units increasingly small. If this involves invention the credit belongs to the previous inventors.

The Supreme Court said in Lincoln Engineering Co. v. Stewart-Warner Corp., 303 U.S. 545, 58 S.Ct. 662, 82 L.Ed. 1008, decided March 28, 1938: "And the improvement of one part of an old combination gives no right to claim that improvement in combination with other old parts which perform no new function in the combination." [page 664.]

In short what Caesar did was to put together the most efficient types of two well-known heating elements, i. e., a radiator and a fan, connect them to the liquid cooling system of an automobile, add a rheostat and switch connected to the car battery system. The resulting efficiency and reduction in size of this assembly made it possible to place it under the dash and within the body of the car and obtain old results in a more efficient manner. This is not invention. See Judge Kenyon's opinion and authorities cited in Tropic-Aire, Inc., v. Sears, Roebuck & Co., 8 Cir., 44 F.2d 580. In the very late case of Mantle Lamp Co. v. Aluminum Co., 301 U.S. 544, 57 S.Ct. 837, 81 L.Ed. 1277, the Supreme Court said, at page 546, 57 S.Ct. at page 838: "We are of opinion that all the elements of the patent were old and aggregation of them did not involve the exercise of inventive genius but of mechanical adaptation."

And, page 547, 57 S.Ct. page 838: "In short, anyone familiar with the prior art needed only by exercise of mechanical skill to combine known methods and structures and so attain the combination exhibited in the patent."

The commercial success and popularity of the Caesar heater cannot be gainsaid. It does not, however, exclude all other types. Commercial success may be the result of extensive advertising, pressure salesmanship, and a variety of factors other than inventive genius. It is only to be considered in cases of doubt.

"Commercial success may turn the scale when invention is in doubt." Smith v. Hall, 301 U.S. 216, at page 233, 57 S.Ct. 711, at page 718, 81 L.Ed. 1049.

In our opinion the claims are invalid over the prior art.

The claims of this patent were held invalid in Tropic-Aire, Inc., v. Sears, Roebuck & Co., 8 Cir., 44 F.2d 580 supra, certiorari denied, 282 U.S. 904, 51 S.Ct. 217, 75 L.Ed. 796; and Tropic-Aire, Inc., v. Wildermuth, 2 Cir., 64 F.2d 342, certiorari denied, 290 U.S. 653, 54 S.Ct. 69, 78 L.Ed. 566. Nevertheless counsel have requested and are entitled to the independent judgment of this court. Lowell v. Triplett, 4 Cir., 77 F.2d 556, affirmed, Triplett v. Lowell, 297 U.S. 638, 56 S.Ct. 645, 80 L.Ed. 949.

Hence this opinion.